We'll hear argument next in Brady v. Friedlander et al., 23-515. Mr. Brady? Mr. Brady? You can sit on that side. All right, Mr. Brady. Mr. Brady, you can proceed. First, Your Honor, I had asked for, the other day, ten minutes, and I was told that that request was denied. And I'm asking again that maybe I could at least get eight minutes. I'm going to give you six minutes, but just so you understand, we've read all the materials. We are, as you can tell, a very prepared panel, so we understand the facts, the factual background, the legal arguments, but this is your time, and I'm going to give you an extra 30 minutes, because I've been talking for 30 minutes, 30 seconds. I've been talking for 30 seconds. Thank you. But please, I think you can do this in a lot of time. Okay. I ask the Court to put yourself in my position. Seven years into this case, a new judge takes over, a fifth judge, and he dismisses the case with a motion to dismiss, and he does not explain anything or write any sort of decision. I did not, and that is why, with tolling, I came to this Court to have my claims adjudicated, since they were not adjudicated, in state court. Specifically, the breach of contract claim. I did not come here as a loser. I possessed a decision from Judge St. George, it's appendix page 90, who said that it was required that the breach of contract claim be tried. Okay, so I possess the highest decision that there is, and the breach of contract claim went all the way to the Court of Appeals, and it was maintained. So it needed to be adjudicated, and my evidence proves that it was never adjudicated, and that Judge Moran repeatedly refused to say yes or no, whether the contract was breached, even though it was undisputed between the parties that the contract was breached. Okay, so it would be false when Judge Engelmeyer said that the Freelander I action ended with an adjudication on the merits. If that's true, and for this Court to affirm that false statement, you would need to show where that is shown. The opposite is true. He was pressed to answer repeatedly in April and also in July 10th, again stressing and giving all the examples of the admitted ways that Mark Freelander broke the contract. The evidence shows that he never said, in order for me to have been a loser, he would have had to have said, yes, Mr. Freelander did not break the contract. When he was pushed to say, are you saying he did not break the contract, sir? He did not say, that's what I'm saying. He never said the contract wasn't broken. Everybody knows the contract was broken, and that's where you may, I'm sure you know about me. Everybody seems to, and I'm constantly being accused of things when I'm exposing different corruption in the courts. This guy came in, and everybody seems to benefit from the disdain toward me. But the fact is, they worked together. Repeatedly, they were pressed. There was an April war argument also, where it's asking after the depositions, listed all the examples of how Mr. Freelander broke the contract, and for the benefit of Mr. Freelander, he never answered the question. Undisputed, the contract was broken. We gave all these different examples. And like I said, in the transcript, even the July 11th transcript is the best one. That's Exhibit 9, page 104. Even when I'm asking, sir, are you saying that he did not break the contract, he did not reply to that. Instead, he said, I've been reversed. I got reversed on this election law case last year. I'm not doing it because I think I'm going to get reversed. I have to make the decision to read everything. I read everything. I'm comfortable with what I did. The case is over. Seven years. That's what he did to me. Okay. He knew also that law of the case required him to make a decision on it, not only because it went all the way to the Court of Appeals as a triable issue, but also because of the fact that I possessed it from Judge St. George, that he had to, whether he had to, because of law of the case, make a ruling on that. This case was trial ready. This man took over the case, and he never did anything. Okay. So, Mr. Brady? Yes. You've reserved two minutes of rebuttal. Okay. Thank you. So we'll hear from the other side, and then we'll hear again from you. Okay? Yes. Thank you. Good morning, Your Honors. William Schlafer for the appellee Mark S. Friedlander, Esquire, and the law firm of Mark S. Friedlander. It is our position that this is a very straightforward facts in law and that Judge Engelmeyer's decision is correct and should be affirmed. With that said, I'm happy to answer any questions, but otherwise rest on our papers. Thank you. Mr. Mills? Good morning. Your Honor, may I please report John Mills of Gordon-Reese for appellees Kenneth McClellan, Keith Roussel, and Wingett Spadafora in Schwartzburg? Plaintiff's claims against Wingett Spadafora are premised upon an alleged conspiracy with Justice Marin to grant summary judgment dismissing plaintiff's claims against Wingett Spadafora's client, Mark Friedlander. Plaintiff claims that a decision was never entered and the case in state court was inappropriately dismissed. Plaintiff is wrong. There was a decision granting summary judgment on the merits dismissing plaintiff's remaining claims against Friedlander. Plaintiff argues that he has not brought suit against Wingett Spadafora as a state court loser and that he is not seeking to overturn the decision in order entered by Justice Marin. Plaintiff is wrong. Plaintiff argues that his claims against Wingett Spadafora were sufficiently pled and should not have been dismissed by the district court. Plaintiff is, again, wrong. The district court appropriately determined that plaintiff's claims are barred by the Rooker-Feldman Doctrine. Plaintiff's complaint alleges an agreement between Wingett Spadafora and Justice Marin to dismiss the case pending in state court. In substance, however, the complaint seems nothing more than to overturn the case and relitigate the claims that were dismissed on the merits by Justice Marin. This is exactly the type of case that the Rooker-Feldman Doctrine was designed to bar. With respect to the Rooker-Feldman issue, I take it that the principal dispute, maybe not the only one, relates to whether there was an adjudication on the merits. Is that right? Correct, Your Honor. Plaintiff did not file a notice of appeal, nor did he file a motion to renew or re-argue the decision in state court. Instead, he brought suit in federal court in the hopes that he would obtain more favorable results. Indeed, he asserts the same cause of action against Friedlander and admits that the complaint is nearly identical. The district court appropriately dismissed the claims pursuant to the Rooker-Feldman Doctrine. District court also appropriately determined that plaintiff's claims against Wingett Spadafora failed to state a claim. First, New York law does not recognize civil conspiracy as an independent cause of action. That is undisputed. And as to the Section 1983 and 1985 claims, as the district court noted in its decision, plaintiff offers no facts that plausibly support the existence of any alleged conspiracy other than his mistaken belief that an order was never entered. As we sit here today, plaintiff cannot point to any specific overt act on behalf of Wingett Spadafora in furtherance of any alleged conspiracy. Lastly, the district court appropriately denied plaintiff leave to amend. Plaintiff has sought time and time again over the past ten years to re-litigate these claims in state and federal court, all of which have been rejected. And as this honorable court recently held in Brady v. IGS Realty, which is a related case, any such amendment would be futile as plaintiff cannot suggest any facts that would render its claims plausible if he were given that opportunity to amend. Thank you. Thank you. Mr. Brady. Your Honor, so the key to this worker-felon thing would be for this court to say and point to where Judge Moran said that he was dismissing as a summary judgment my breach of contract claims. He never said that. Okay? He dismissed it as a motion to dismiss, refusing to adjudicate the issue that he was mandated to address under law of the case. I then moved the case here, and tolling permitted me to do so. It was within three months, and it was to have the issues that Mr. Moran refused to adjudicate adjudicated, which is why it's acknowledged that it was the identical complaint, with the exception of the 1985 violations. It clearly acted in collusion with each other to disregard the mandated duty to address this. The law of the case was the one that Judge St. George did, and there's nowhere did this case ever get decided on the merits, as that record shows. So you need to point to that to back that false claim. As far as the appeals. Mr. Brady, just so that I understand, the order says that the dismissal was with prejudice and that the case was over. I don't think the order said that it was with prejudice, Your Honor. Okay. But I don't think so. And secondly, like I said, he never adjudicated the issue. It's a true or false question. Repeatedly he was pressed to say, why don't you answer this question now, sir, and refused to. So the conspiracy was laid out in detail. As far as, too, they never served a notice of entry, so my time to appeal this didn't start, and they never attached his decision or called it a decision. Okay. So, again, my time to appeal in State court would not have started. But I was already having a motion for summary judgment that was denied. I had a right to have this case tried, and that never took place, and that's why I ask that you reinstate these claims against Friedlander here. Thank you very much, Mr. Brady. Very much appreciated. We'll reserve the decision, which means that each side will get a decision in due course that completes today's oral argument calendar. Happy Thanksgiving to everybody. And I'll ask the clerk to adjourn the court. The court stands adjourned. Thank you.